# WHEELING.

BELL VS. LIST ET ALS.

1873.
June Term.

JOSEPH BELL, DEFENDANT AND APPELLANT, *against* HENRY K. LIST, BENJAMIN DAVENPORT AND GEORGE H. PARKS, SURVIVORS OF THEMSELVES AND ROBERT MORRISON, DEC'D, WHO WERE PARTNERS UNDER THE FIRM NAME OF LIST, MORRISON & CO., PLAINTIFFS, AND D. C. LIST, ADM'R OF J. C. ACHESON, DEC'D, DEFENDANT—APPELLEES.

Decided July 17th, 1873.

### SYLLABUS.

1. A. filed his bill against B., the administrator of C., claiming a debt against the estate of C., claiming that he was entitled to have his debt paid out of the assets in the hands of the administrator. B. answered the bill, and claims that there was not sufficient assets to pay the debts against the estate. The court referred the cause, by consent of the parties to the bill, to a commissioner to ascertain among other things "What debts are due from said estate and

1873.
June Term.

respective priorities, if any, and any other matters deemed perti-
nent by any of the creditors of the said estate, or any of the par-
ties in interest;" and directed the commissioner in the decree, be-
fore proceeding to state the account, to give notice to the creditors
and all persons interested in the estate, by publication of the time
and place of taking the same in some newspaper published in the
city of Wheeling, at least four weeks before commencing to take
the said account; and the court, in the decree, adjudged that such
publication shall be equivalent to personal service.  The commis-
sioner proceeds to discharge his duties under the decree, and among
other debts against the estate of A., he reports a debt as being due
to B. of $4,000, in the aggregate, exclusive of interest.  The court
hears the case upon the bill, answer of L., administrator, and report
of the commissioner, to which no exceptions were filed, and di-
rects what disposition shall be made of the assets, and orders that
after paying the costs of suit and the funeral expenses, amounting
to $169.68, out of the residue to pay the balance *pro rata* on the
debts mentioned in Schedule A to the extent of the funds in his
hands—Schedule A is a list of the creditors of the estate, showing
the amount due to each, filed with the commissioners report and
as part thereof, and B. is one of the creditors.  B. feeling aggrieved
by this decree, moves the Circuit Court after due notice, to re-
verse and set aside said decree, and the Circuit Court, on motion,
dismissed the motion to reverse.  HELD,

That it was not error in the Circuit Court to dismiss the mo-
    tion, because the decree sought to be reversed was not a decree
    on a bill taken for confessed.

The case is stated in the opinion of the Court.

*Peck* for Appellant.

*Pendleton* and *Davenport* for Appellees.

HAYMOND, President.

Henry K. List, Benjamin Davenport and George H.
Parks, survivors of themselves and Robert Morrison,
late partners as List, Morrison & Co., filed their bill in
the Circuit Court of Ohio county against Daniel C. List,
administrator of the estate of James C. Acheson, de-
ceased, alleging that the decedent at his death was in-
debted to them upon account for goods &c. in the sum of
$67.03; that no part of their debt has been paid; that
decedent died intestate, and Daniel C. List on the 8th day

of July 1870, was duly appointed administrator of decedent; that the administrator has converted the assets of the estate into money, and refused to distribute the same, and pay Plaintiffs their debt which they are entitled to receive out of the funds in the hands of the administrator, and that the administrator refused to distribute any of the assets among the creditors of the estate.  The bill prays that the admistrator be compelled to make an account of what assets of the estate have come into his hands to be administered, and what disposition he has made of the same, and that he be decreed to pay the Plaintiffs' debt and interest in such order of priority as they may be entitled to have the same paid &c.  The administrator filed his answer to the bill, in which he says it is true he has reduced to his possession the personal assets of the decedent in so far as they are accessible, but that there are other and outstanding matters and assets which cannot now be converted by him, owing to alleged liens upon them, and without them the estate, he thinks, is insolvent, that he has for this reason refused to make payment to creditors, not knowing to what they are entitled, or how they stand *inter se,* and that he has decided to distribute the assets only upon the order of the Court whose advisement he asks in the premises; that he is willing that all proper accounts shall be taken, and, upon their coming in, he asks the court to make such order as to the funds of the estate and their appropriation as will save him harmless.

The cause seems to have been placed on the docket of the Circuit Court at the April term 1871 thereof.  And by consent of the parties to the bill, the cause was heard upon the bill, answer of the administrator and general replication thereto, and the Court decreed that the cause be referred to one of its commissioners to ascertain and report, first, what assets have come into the hands of the administrator; secondly, what assets, if any, there are belonging to the estate unadministered, their character and condition, and what liens there are upon the assets,

if any ; what debts are due from the estate and their respective priorities, if any ; thirdly, any other matters deemed pertinent by any of the creditors of the estate, or by any parties in interest. But before proceeding to state the account the commissioner is directed to give notice to the creditors, and all persons interested in the estate, by publication of the time and place of taking the same, in some newspaper printed in the city of Wheeling, at least four weeks before commencing to take the account ; and the decree provides that such publication shall be equivalent to personal service. The commissioner, in pursuance of this decree, made his report. On the 26th of June 1871, at a Circuit Court, the cause came on to be heard, by consent, upon the bill, answer and report of commissioner Cranmer, to which there were no exceptions filed. And the Court made a final decree in the cause, in which, among other things, it is recited and decreed as follows, viz : "And it further appearing from said report that at the death of said Acheson he was indebted to the Merchants and National Bank in the sum of $4,000, and that said bank, at that time, held ten shares of its capital stock in the name of said Acheson, which has since been delivered up to said administrator upon the terms set forth in said report of the master, the Court being of opinion that the said bank had the right to offset its debt of $4,000 against any claim of the said administrator for said stock, doth order that the net proceeds of said stock be applied by the said administrator towards the payment of the debt due the Bank. And the Court doth further order, that after paying the costs of suit and the funeral expenses, amounting to $169.68, the said administrator pay *pro rata* the debts mentioned in Schedule A. to the extent of the funds in his hands. By reference to Schedul A. it is seen that the debt of Joseph Bell, in the aggregate, exclusive of interest, is near $4,000, as reported by the commissioner. The assets in the hands of the administrator unadministered, according to the report of the commissioner, is $1,468.56, including

$1,037.50 the proceeds of the ten shares of bank stock. There are a number of debts reported against the estate of decedent as being due and unpaid, which, in the aggregate, amount largely beyond the assets reported. The debt of Joseph Bell against the estate of decedent, among others, is reported by the commissioner. The appellant Joseph Bell, being a large creditor, feeling himself aggrieved by the final decree in the cause, appeared in court on the 16th day of October 1871, and on his motion leave was granted to him to file his motion to set aside the orders and decrees entered in said cause, and for the purpose of reviewing and reversing the same. This was at a term of the court subsequent to the rendition of the final decree. Notice of the motion seems to have been served on the parties to the bill a sufficient length of time prior to its being made. On the 9th of March 1871, this entry and order was made in the cause viz: "List, Morrison & Co., vs. J. C. Acheson, administrator, &c., upon a petition of Joseph Bell filed herein.

This cause came on this day to be heard upon the motion of Henry K. List, made at the last term, to dismiss said petition as improperly filed herein. Upon consideration whereof, the Court doth sustain said motion, and does hereby dismiss said petition." From this order of the Circuit Court dismissing the said motion and petition, Joseph Bell has appealed to this Court. The motion so dismissed was made under so much of the provisions of the 5th sec. of Ch. 134 of the Code of 1868 as is in these words, viz: "The court in which there is a judgment by default, or a decree on a bill taken for confessed, or the judge of said court in the vacation thereof, may, on motion, reverse such judgment or decree for any error for which an appellate court might reverse it," &c. In the case of Richardson's ex'x et al., vs. Jones, 12 Gratt., 55. Judge Lee in delivering the unanimous opinion of the court, in speaking of the provision just cited, says: "And in such a case no reversal or

58

amendment could be effected under the 5th sec. which only applies when the supposed error appears in some part of the record. S,o recently, held by this Court, in Powell's case, 11 Gratt. 822."

I think such is clearly the proper construction of the provision. It is objected here that the Appellant is not such a party to the original cause as is entitled to appeal from the final decree in the cause, or move to reverse under said 5th sec., or appeal from the order dismissing the motion to reverse. Story in his equity pleading, sec. 99, says: "Thus a few creditors may maintain a suit in behalf of themselves, and all the other creditors of a deceased debtor, against his proper representatives, for an account and application of his assets, real as well as personal, in payment of their demands. In such a case, the whole administration and settlement of the estate is assumed by the court, the assets are marshalled, and the decree is made for the benefit of all the creditors. The other creditors may come in under the decree, and prove their debts before the master, to whom the cause is referred, and obtain satisfaction of their demands equally, with the Plaintiffs in the suit; and under such circumstances they are treated as parties to the suit. If however, they decline to come in before the master, they will be excluded from the benefit of the decree; and yet they will from necessity be considered as bound by the acts done under its authority." See also, 2 Paige R. 19—the opinion of Chancellor Walworth; also note 1, in the latter part of said sec. of Story. The court may, on a bill filed by a single creditor against the administrator alone upon a proper case made, make a general decree for a general account, as is done in a common bill for all the creditors. 1st Story Com. on Eq., sec. 546, note 2, and authorities there cited; also Story Eq. Pl., sec. 100, note 1, latter part of section, and the many cases there cited. Stephenson *vs.* Taverners, 9 Gratt. 398. At the end of note 1, page 100 of Story Eq. Plea, sec. 99—it is said: "In the case of creditors coming before

the master, they have been held entitled to re-hear the cause, though not technically parties, because the decree affected their interest." Gifford vs. Hart, 1 Sch. & Lefr. 409. In the case last cited the Chancellor, on page 409, says: "Even in cases of creditors coming before the master, they have been held entitled to re-hear the cause though not parties, because the decree affected their interest." In Hungerford's case, the creditors complained that the property had not been applied as it ought; it was objected that they should not come in under the decree, and impeach the decree; it was answered that they might; for if the decree contained in itself a wrong disposition of the property, they, coming in as creditors, had a right to appeal, because the decree bound their right. See also 2 Bro. P. C. 314. I think under the provisions of the 1st sec. of Chap. 135 of the Code, it was competent for the Appellant to appeal from the order of the Court, dismissing his motion to reverse the final decree; but, I do not think, that the final decree sought to be reversed by the motion was a decree "on a bill taken for confessed," or that it can be so considered in any sense. It was evidently a decree upon bill, answer, &c. Still as the commissioner reported the debt of the Appellant, as a debt due against the estate, it must be taken *prima facie*, at least, that the Appellant responded to the notice of the commissioner, and appeared before him, and proved his debt under the decree of reference; and thereby became substantially a party to the suit. The commissioner having reported Appellants debt, and the report being affirmed, the Appellant justly became a claimant in the suit, for such part of the assets in the hands of the administrator as by law he was entitled to. The Appellant being one of the creditors named in Schedule A, mentioned in the decree, he is thereby made a benificiary party to the decree. The Appellant being *prima facie* a party to the suit, and the final decree not being a decree on a bill taken for confessed; the Appellants remedy if he desired to bring the decree under

review before this Court, was by appeal directly from the decree and not by motion to reverse before the Circuit Court. I do not mean to intimate that there is or is not, such error apparent on the face of the record as this Court could notice to reverse the decree on direct appeal therefrom, that question is not now properly before us. For these reasons the order of the Circuit Court, appealed from in this cause, must be affirmed with costs to the Appellees, and thirty dollars damages; but without prejudice to the Appellant's right to appeal from the final decree rendered in the causes of List, Morrison & Co. *vs.* Daniel C. List, administrator of James C. Atcheson, deceased, and D. Lynn *vs.* same, or either of them, which decree was rendered by the Circuit Court of Ohio county on the 26th day of June 1871.

HOFFMAN, MOORE and PAULL, Judges, concur in the foregoing opinion.